## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DONNA J. NEALEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **No. 06-2237-CM** |
| ) | |
| **WATER DISTRICT NO. 1 OF JOHNSON** ) | |
| **COUNTY, KANSAS,** ) | |
| ) | |
| **Defendant.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

## MEMORANDUM AND ORDER

Plaintiff Donna J. Nealey brings this action against defendant Water District No. 1 of Johnson County, Kansas.  Plaintiff, a former employee of defendant, alleges defendant: (1) discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"); (2) discriminated against her in violation of the Americans with Disabilities Act ("ADA"); (3) interfered with her rights under the Family Medical Leave Act ("FMLA"); (4) retaliated against her for exercising her FMLA rights; (5) retaliated against her for protected activity under the ADEA; and (6) retaliated against her for protected activity under the ADA.  The case is before the court on defendant's motion for summary judgment (Doc. 46).  The court grants the motion.

## I.       Background

At all relevant times, plaintiff was over forty years old.  Plaintiff began working for defendant in 1988.  By March of 1994, plaintiff worked as an administrative secretary for director Dan Smith.  From 1994 to 2004, defendant gave plaintiff positive reviews, including "satisfactory," "competent," and "commendable."  On April 27, 2004, after an incident involving a co-worker

giving plaintiff an injection at work, defendant placed plaintiff on administrative leave. The leave spanned an investigation into whether plaintiff violated defendant's alcohol and drug policy. Defendant determined that plaintiff did not violate the policy, but the investigation also examined the growing difficulties in the relationship between plaintiff and Dan Smith. Five days before plaintiff's administrative leave began, Dan Smith created a "memorandum of discipline," but never provided a copy to plaintiff.

Despite plaintiff's insistence on returning to her former position, defendant instead negotiated other alternatives with plaintiff. These alternatives included disability retirement and two alternative positions. Plaintiff agreed to accept one of the suggested alternatives, returning to work in September 2004. Defendant assigned plaintiff to report to Greg Johnson. Johnson kept a log of incidents related to plaintiff. Johnson did not keep a similar log for any other employee.

From May 2005 to March 2006, plaintiff requested various periods of leave under the FMLA. These requests were approved. Also during this period—beginning in June 2005—defendant identifies several instances of plaintiff sleeping at work. At times, plaintiff would fall asleep with her head on the keyboard, causing her computer to beep. Defendant told plaintiff that she was not allowed to sleep at work and discussed leave options with her. On December 28, 2005, plaintiff reportedly fell asleep during a meeting regarding her FMLA leave.

On January 30, 2006, Dan Smith wrote a memo to other managers stating that plaintiff "had done a masterful job . . . to manipulate all of us into an impossible situation" and asking, "[i]s there nothing you guys can or are willing to do." In February 2006, members of defendant's management attended two audio conferences. The first was entitled, "Terminating Employees Without Getting Sued." The second featured the title, "FMLA Abuse: Fight Back and Win."

On March 7, plaintiff received her first written warning about sleeping at work.  On March 13, plaintiff was seen sleeping at her desk.  The following day, defendant placed plaintiff on leave. On March 17, plaintiff received a letter terminating her employment effective March 31, 2006.

## II.     Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Analysis

## A.     ADEA claim

Plaintiff does not argue that she has direct evidence of age discrimination.  In the absence of such evidence, the court analyzes plaintiff's claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas*, plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *Id.* at 802.  If plaintiff presents a prima facie case, the burden shifts to defendant to produce a legitimate, non-discriminatory reason for the employment action.  *Id.*  If defendant meets its burden, plaintiff must demonstrate that an issue of material fact exists as to whether defendant's proffered reason is merely pretextual.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993).  Pretext can be established if plaintiff shows either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  "[A] plaintiff's prima facie case, combined with sufficient

evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *see also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) ("In evaluating ADEA claims, the Tenth Circuit uses the three-stage analysis outlined in *McDonnell Douglas*.").

To establish a prima facie case under the ADEA, plaintiff must show that: (1) she was within the protected age group; (2) she was doing satisfactory work; (3) she was subjected to an adverse employment action; and (4) her position was filled by a substantially younger person. *Rivera v. City and County of Denver*, 365 F.3d 912, 919 (10th Cir. 2004) (quoting *McKnight*, 149 F.3d at 1128); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996).

Here, defendant argues that plaintiff cannot prove that she was doing satisfactory work. When evaluating this element, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Wiemer v. Learjet Inc.*, 113 F. App'x 887, 889 (10th Cir. 2004) (quoting *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996). The court will not substitute its business judgment for that of the employer. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988). Moreover, the court recognizes that it must evaluate employers' decisions based upon the information available to them at the time the decision was made. *Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001). Relevant evidence to establish that plaintiff performed satisfactory work may include: (1) "evidence that she continued to possess the objective qualifications she held when defendant hired her; (2) . . . her own testimony that her work was satisfactory; or (3) . . . evidence that she held her position for a significant period of time." *Grosdidier v. Leisure Hotels, LLC*, 05-2090-KHV, 2006 WL 750830, at

*7 (D. Kan. Mar. 23, 2006) (citing *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991); *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1421 (10th Cir. 1991)).  It remains that unsupported, conclusory testimony may be insufficient to meet plaintiff's burden to establish a prima facie case.  *Id.*

Although in the argument portion of her brief plaintiff only addresses this issue with the succinct assurance that, "[p]laintiff has come forward with her long history of satisfactory written performance appraisals, verifying that her work was satisfactory right up through the point where she was wrongfully placed on administrative leave[,]" plaintiff's statement of facts provides slightly more detail.  Plaintiff began working for defendant in 1988 and by 1994 was in the position at issue.  From 1988 to 2001, her work was rated "satisfactory" or "competent."  On the last written appraisal before she was placed on administrative leave, she received an overall performance rating of "competent" or "commendable."  Because this evidence must be viewed in the light most favorable to plaintiff, the court finds that plaintiff has provided sufficient evidence to avoid summary judgment on this issue.

Defendant also argues that plaintiff cannot prove that she was subjected to an adverse employment action.  To satisfy this element, plaintiff must show a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Velazquez v. Tyson Fresh Meats, Inc.*, No. 06-2300-JWL, 2007 WL 2994068, at *6 (D. Kan. Oct. 12, 2007) (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004)).

Plaintiff responds that defendant placing her on administrative leave pending an investigation and ultimate removal from the position of administrative secretary is an adverse employment action.  Plaintiff was reassigned to a new position.  The new position was in a different part of the building

and no longer involved maintaining the trust and confidence of the director, Dan Smith.  For the purposes of resolution of this motion, the court finds that this is sufficient to show reassignment with significantly different responsibilities, satisfying the adverse employment action element.

Because plaintiff has established a prima facie case of age discrimination, the burden shifts to defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. Defendant identifies the reasons for the change in plaintiff's employment as: (1) increasing difficulty in the relationship between plaintiff and her supervisor due to plaintiff's discussions with other employees about her supervisor; and (2) plaintiff's absences.  Plaintiff "does not dispute" that defendant has met its burden of providing a legitimate, non-discriminatory reason for the adverse employment action.

As a result of defendant offering a legitimate non-discriminatory reason, plaintiff must demonstrate that an issue of material fact exists as to whether defendant's proffered reason is merely pretextual.  Defendant argues that plaintiff cannot make this demonstration.  Defendant cites uncontroverted excerpts from plaintiff's deposition.  As stated in defendant's statement of facts, "[w]hen [plaintiff] was asked how her paid administrative leave was related to her age, Plaintiff first testified, 'I don't know if I can answer that at this time' and then testified that Luce was young and petite.'" Def.'s Br. Summ. J. (Doc. 47) 24.

Although plaintiff again chose not to address evidence of pretext in the argument portion of her response, plaintiff listed twelve items under the heading "Plaintiff's evidence of 'pre-text' in 2004" in the facts section.  The first two items state that plaintiff was not placed on leave for the reasons in the April 22, 2004 memorandum, nor was a copy of this memorandum given to plaintiff. Plaintiff does not clarify what the reasons stated in this memorandum were or provide a copy of the memorandum.  Without evidence relating this memorandum to the uncontested legitimate,

nondiscriminatory reason provided by defendant, these items cannot prove pretext.  Similarly, the

third item states that defendant determined that plaintiff did not violate the alcohol and drug policy.

This does not challenge or relate to the uncontested legitimate, nondiscriminatory reason provided

by defendant.

The fourth item on plaintiff's list of evidence establishing pretext claims that "Defendant's

stated reasons for refusing to restore Plaintiff to her former position included the fact that she had

claimed that Dan Smith 'has made inappropriate discriminatory and harassing comments to [her]

about [her] medical condition and related absences.'"  However, the court agrees with defendant's

description of this evidence as a "distortion" of the record.  The letter plaintiff cites to support this

statement includes the passage quoted by plaintiff, but makes the statement in relation to defendant

investigating those claims.  The letter then states:

> our investigation did not reveal any inappropriate comments or conduct on Dan's
> part.  On the other hand, one thing that became clear though the investigation is that
> there has been a serious breakdown in the direct working relationship between you
> and Dan . . . due to this breakdown in the working relationship, we believe that it
> would not be in the interests of either you or the District to allow you to be a direct
> report to Dan Smith.

The phrase "on the other hand" separates plaintiff's claims of discriminatory statements—which do

not relate to age discrimination—from the reasons given for changing plaintiff's employment.

Moreover, the given reasons in the letter correspond to the legitimate, nondiscriminatory reason

provided by defendant.

Next, plaintiff lists—in items five and six—that Dan Smith was never interviewed about any

claims of bias made by plaintiff and did not ask plaintiff for her "story regarding the alleged

violation of the drug and alcohol policy."  For this to be evidence of pretext, the court would need to

make several logical leaps.  Without plaintiff providing any argument that clarifies the implications

of this evidence, the court is unsure, even after making reasonable inferences, how it shows that defendant's reasons are pretextual.

Items seven through ten on plaintiff's list relate to events that occurred after plaintiff returned to work in her new position. Lastly, items eleven and twelve address the qualifications of the person who replaced plaintiff as Dan Smith's administrative secretary. These items do not address or challenge defendant's stated reasons for placing plaintiff on leave or in the new position. They are not evidence that those reasons were pretextual.

Having reviewed plaintiff's listed evidence of pretext, unsupported by argument, the court finds that none of the items indicate that a discriminatory reason more likely motivated the employer or that the defendant's proffered explanation is unworthy of credence. Even when considered as a whole, these items are insufficient evidence of pretext. Plaintiff has not met her burden under *McDonnell Douglas* to show that defendant's nondiscriminatory reason was pretextual. Defendant's motion for summary judgment is granted on this claim.

**B.     ADA claim**

Plaintiff claims that defendant regarded her as being disabled and discriminated against her by placing her on administrative leave and ultimately removing her as Dan Smith's administrative secretary. Because plaintiff does not identify any direct evidence of disability discrimination, her ADA claim is also subject to the *McDonnell Douglas* burden-shifting framework. *Mendia v. Hawker Beechcraft Corp.*, No. 06-1212-JTM, 2008 WL 216914, at *8 (D. Kan. Jan. 17, 2008) (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003); *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 747 (10th Cir. 1999)). To establish a prima facie discrimination claim under the ADA, plaintiff must show that: (1) she is disabled as defined in the ADA; (2) she is a "'qualified individual' meaning that [she] is 'able to perform the essential functions of the job, with

or without reasonable accommodation;' and (3) [defendant] took adverse employment action against

[] plaintiff because of [her] disability." *Id.* (citing *MacKenzie v. City & County of Denver*, 414 F.3d

1266, 1274 (10th Cir. 2005)).

Defendant argues that plaintiff cannot show that she is disabled as defined in the ADA.

While the ADA lists three definitions of disability, plaintiff concedes that the only applicable

definition is "being regarded as having such an impairment" that "substantially limits one or more of

the major life activities of" plaintiff.  42 U.S.C. § 1202(2).  To establish an ADA claim for being

regarded as having a disability, plaintiff must show that defendant "has mistaken beliefs about

plaintiff's abilities: [defendant] 'must believe either that one has a substantially limiting impairment

that one does not have or that one has a substantially limiting impairment when, in fact, the

impairment is not so limiting.'" *Jones v. U.P.S. Inc.*, 502 F.3d 1176, 1190 (10th Cir. 2007) (quoting

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).  Defendant must mistakenly believe that

the "impairment substantially limits the employee in one or more major life activities." *Id.*

Plaintiff contends that defendant regarded plaintiff as having "a physical or mental"

impairment that substantially limited her ability to work.  To show a limitation of the major life

activity of working requires more than an inability to perform a particular job.  *EEOC v. Heartway

Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006) ("The inability to perform a single, particular job does

not constitute a substantial limitation in the major life activity of working.").  Instead, plaintiff must

show that defendant thought she was disabled, and that defendant believed that the disability "would

prevent [her] from performing a broad class of jobs." *Id.*  (citing *Ross v. Campbell Soup Co.*, 237

F.3d 701, 709 (6th Cir. 2001)).  As a result, the Tenth Circuit clarified that "for an employee to

prevail on a 'regarded as' claim with respect to the major life activity of working, there must be

sufficient evidence that the employer *subjectively* believed the employee to be significantly

restricted as to a class of jobs or broad range of jobs in various classes." *Id.* at 1163 (emphasis in original).

Plaintiff's listed evidence does not sufficiently establish that defendant believed plaintiff could not perform a broad class of jobs. The only evidence plaintiff relies on to support her assertion that defendant regarded her as being disabled is that defendant "went so far as to propose 'disability retirement' for her in June of 2004." However, plaintiff's evidence also shows that defendant understood this as "the definition of disability for the first 36 months is the inability to perform the function of her own job[; a]fter 36 months, the definition applies to her inability to perform any occupation, depending on her experience and skill level." Here, plaintiff and defendant agreed that plaintiff could return to work, albeit in a new position, well before 36 months after disability retirement was proposed. At most, plaintiff's evidence can only show that defendant possibly considered plaintiff unable to perform her former position. In fact, defendant offered plaintiff two new positions.

In her argument section of her brief, plaintiff also identifies two other items of "sufficient evidence that Plaintiff's superiors 'regarded' plaintiff as substantially limited in her ability to work." Pl. Br. Summ. J. (Doc. 69) 56. Plaintiff cites that defendant approved plaintiff for FMLA leave. The court, without any further explanation or argument from plaintiff, will not consider respecting one statutory right to be indicative of regarding someone as disabled. Plaintiff also cites testimony from "Vicki Day that she had concerns about whether Plaintiff could perform any job at the District." *Id.* Upon review of the evidence submitted in support of this statement, the court finds the statement unrelated to the present claim. Plaintiff bases her ADA claim on her being placed on administrative leave in 2004. The cited deposition testimony is in response to a question asking about concerns from 2005 forward. Consequently, plaintiff has not demonstrated that defendant

-10-

subjectively believed she was restricted as to a class of jobs or broad range of jobs.  Lacking such

evidence, plaintiff cannot show that defendant regarded her as being disabled.  Plaintiff has failed to

establish a prima facie case of discrimination under the ADA.  The court grants defendant's motion

for summary judgment on this claim.

## C.    FMLA Interference

Plaintiff claims that by disciplining her in 2005 and 2006 and terminating her employment on

March 31, 2006, defendant interfered with plaintiff's FMLA rights.  To establish a prima facie case

for FMLA interference, plaintiff must show: "'(1) that she was entitled to FMLA leave, (2) that

some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the

employer's action was related to the exercise or attempted exercise of [her] FMLA rights.'"

*Satterlee v. Allen Press*, *Inc.*, No. 06-3385, 2008 WL 1766789, at *3 (10th Cir. Apr. 17, 2008)

(quoting *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005)).  Also relevant to the

present analysis is that "an employee who is entitled to FMLA leave may nevertheless be terminated

if there is no causal connection between the termination and her rights under the FMLA."  *Id.*

(basing this statement on the proposition that "an employee who requests FMLA leave has "no

greater protection against his or her employment being terminated for reasons not related to his or

her FMLA request than he or she did before submitting the request").

Defendant argues that its actions were unrelated to plaintiff's exercise or attempted exercise

of her FMLA rights.  Defendant cites a lengthy history of plaintiff acting extremely sleepy and

confused, snoring at her desk, and sleeping on her desk and keyboard—which at times caused the

computer to beep repeatedly.  During several encounters, managers told plaintiff that while she

could not sleep at work, she could take FMLA leave.  On December 28, 2005, plaintiff fell asleep

during a meeting regarding her FMLA leave requirements.  On March 7, 2006 plaintiff received a

written warning for sleeping on the job.  On March 13, 2006, employees reported seeing plaintiff

asleep at her desk.  Defendant suspended plaintiff on March 14, 2006 and sent her a termination

letter on March 17, 2006.

Defendant compares this case to *Coleman v. Blue Cross Blue Shield of Kansas*, 487 F. Supp.

2d 1225 (D. Kan. 2007).  In *Coleman*, the plaintiff made a "multitude of FMLA requests." *Id.* at

1246.  Nearly all of these requests were granted. *Id.*  The defendant in *Coleman* also presented

"sufficient evidence to show that plaintiff would have been terminated regardless of her FMLA

requests." *Id.* at 1247.  The court in *Coleman* found summary judgment to be appropriate "because

plaintiff failed to point the Court to evidence that would create a genuine issue of material fact" as to

whether defendant interfered with plaintiff's entitlement to FMLA leave. *Id.*

Thus, defendant has met its burden of proof on the third element, that its action was not

related to plaintiff's exercise or attempted exercise of FMLA rights. *See Campbell v. Gambro

Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) ("[T]he employer bears the burden of proof

on the third element of an interference claim once the plaintiff has shown her FMLA leave was

interfered with.").  Defendant has shown that plaintiff would have been disciplined and terminated

regardless of her FMLA activity. *See id.* at 1289.

Plaintiff's response on this issue is muddled.  In her argument section of her brief, plaintiff

claims that she "has easily raised genuine issues of material fact" by claiming that defendant ignored

plaintiff's health problems and citing the attendance of some of defendant's managers at a seminar

entitled, "FMLA Abuse: Fight Back and Win" in February of 2006.  On the other hand, in plaintiff's

fact section of her brief on this issue, plaintiff identifies actions that interfered with plaintiff's

exercise of her FMLA rights.  These include: (1) a memorandum stating that plaintiff fell asleep

during a meeting regarding FMLA leave; (2) defendant informing plaintiff that she had 267.25 hours

-12-

of FMLA leave remaining; and (3) seven days before issuing her termination letter, an employee of defendant acknowledged being informed of a medical condition that could qualify for FMLA leave.

The court determines that plaintiff has not created a genuine issue of material fact as to whether defendant's actions related to plaintiff's exercise or attempted exercise of FMLA rights. First, the court notes that plaintiff fails to identify any facts related to this element. Plaintiff has three headings under her FMLA interference claim: (1) "Plaintiff lawfully requested and/or was approved for FMLA leave"; (2) "Defendant disciplined and ultimately terminated Plaintiff"; and (3) "Defendant's actions interfered with, restrained, or denied Plaintiff's exercise of or the attempt to exercise her rights under the FMLA." Plaintiff misunderstands the prima facie elements. The pretrial order identifies the basis of plaintiff's claim as "Defendant interfered with [plaintiff's] FMLA rights in 2005 and 2006 by disciplining her, and ultimately, by terminating her employment." Pretrial Order, Oct. 15, 2007 (Doc. 43). The actions that allegedly interfered with plaintiff's rights for this claim are her being disciplined and ultimately terminated. Plaintiff has either improperly attempted to expand the basis of her claim in violation of the Pretrial Order, or plaintiff has dedicated two sets of facts to one prima facie element while ignoring the third. Because plaintiff failed to provide any argument that clarifies how any of these facts show that defendant's action related to the exercise or attempted exercise of plaintiff's FMLA rights, the court is forced to rely on the titles plaintiff provided.

The court is also forced to rely solely on a title to resolve the items mentioned in plaintiff's argument section. Although the timing and title of the seminar related to "FMLA Abuse" initially gave the court pause, it ultimately is insufficient to establish a genuine issue of material fact regarding defendant's actions. To connect plaintiff's termination to her exercise of FMLA rights through the seminar, the court would need to infer several details about the contents of the seminar,

-13-

the defendant's managers' attention during the seminar, and the impact of the seminar on defendant's managers' course of action regarding plaintiff in response to the seminar.  Plaintiff does not make any effort to raise those arguments.  Instead, plaintiff asks, "Could a reasonable jury conclude that [defendant] acted to "interfere with" or "restrain" or "deny the exercise" of Plaintiff's FMLA rights?"  Pl.'s Br. Summ. J. (Doc. 69) 60.  Again, this rhetorical question does not address the third prima facie element, that the defendant's action was related to the exercise or attempted exercise of FMLA rights.  Without more evidence and explanation from plaintiff, the court will not make more than reasonable inferences.  If anything, the title of the seminar may relate to defendant's intent, which is immaterial to plaintiff's interference claim.  *Moss v. Blue Cross, Blue Shield of Kan., Inc.*, 534 F. Supp. 2d 1190, 1200 (D. Kan. 2008).  Even after attending the seminar, defendant's employees continued to work with plaintiff regarding qualifying medical conditions and paperwork.

Moreover, it remains that plaintiff has offered no evidence to suggest that defendant lacked cause to terminate plaintiff's employment because of her repeated sleeping at work.  Defendant provided plaintiff with a written warning about sleeping at work.  Plaintiff slept at work after receiving the warning.  Defendant then terminated her.  Had another employee engaged in similar conduct, defendant could have terminated that employee.  It appears that plaintiff is requesting greater protection against termination for sleeping because of her FMLA history.  As earlier stated, an FMLA interference claim cannot be supported by such requests for greater protection.  Defendant's motion for summary judgment is granted on this issue.  *See Campbell*, 478 F.3d at 1290 (holding that summary judgment was appropriate where there was insufficient evidence to create a material dispute of fact for the third element of an FMLA interference claim).

**D.    FMLA Retaliation**

Plaintiff claims that by disciplining her and terminating her employment, defendant retaliated

-14-

against her for her protected activity under the FMLA. The FMLA prohibits retaliation by employers against employees who exercise their statutory rights. 29 U.S.C. § 2615(a)(2); *Ney v. City of Hoisington, Kan.*, No. 07-3086, 2008 WL 324203, at *2 (10th Cir. Feb. 6, 2008). The *McDonnell-Douglas* burden-shifting framework covers retaliation claims under the FMLA. *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1170 (10th Cir. 2006).

To establish a prima facie case of FMLA retaliation, plaintiff must show: "(1) she engaged in protected activity; (2) a reasonable employee would have found defendant's action materially adverse; and (3) there is a causal connection between her protected activity and defendant's adverse action." *Ney*, 2008 WL 324203, at *3.

Defendant contends that plaintiff cannot show a causal connection between protected activity and the adverse action. The central question to this issue is "'whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). The court also notes that temporal proximity is highly probative. *See Treat v. Conoco Philips Co.*, No. Civ-05-1330-C, 2007 WL 464707, at *2 (W.D. Okla. Feb. 8, 2007) (finding the time between events to be "key to the inquiry" and comparing Tenth Circuit cases—"*Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (one and one-half month period between protected activity and adverse action may by itself, establish causation) *with Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period, standing alone, is insufficient to establish causation)").

In support of its argument, defendant restates plaintiff's history of sleeping at work. Defendant argues that because this is the motivation for defendant's action, there is no causal link connecting plaintiff's FMLA protected activity to her being disciplined and terminated. "[T]he mere

-15-

fact that Plaintiff was on intermittent leave and had requested a continuous FMLA leave a few days

prior to her discharge does not establish the requisite causal connection." Def.'s Br. Summ. J. (Doc.

47) 46.

Plaintiff responds in her argument section that the "'temporal proximity' standard is easily

satisfied" and that defendant knew plaintiff was taking pain medication that could cause

drowsiness.[1]  Separately, in her facts section on this issue, plaintiff cites the January 30, 2006

memorandum from Dan Smith stating that plaintiff had "done a masterful job . . . to manipulate all

of us into an impossible situation" and asking, "Is there nothing you guys can or are willing to do?"

Plaintiff also cites two conferences attended by members of defendant's management, "Terminating

Employees Without Getting Sued" and "FMLA Abuse: Fight Back and Win."

First, the court addresses the temporal proximity.  Plaintiff identifies the close proximity as

being less than three weeks from March 2, 2006—the date of her "last official approval"—to her

first written warning, suspension without pay, and termination.  Defendant disputes this

characterization of the events.  At this stage, the court must consider the evidence in the light most

favorable to plaintiff.  Because of this judgment standard, the court finds a close temporal proximity

sufficient to establish causation.  Plaintiff has established a prima facie case of FMLA retaliation.

The burden shifts to defendant to articulate a legitimate, nondiscriminatory reason.

---

[1]  Plaintiff also includes a footnote instructing the court that she has "set forth below, in
connection with her ADEA and ADA retaliation claims, a more thorough analysis of the 'causation'
element of a *prima facie* case."  The court has reviewed this "thorough analysis," which actually
only addresses her FMLA claim in a section related to pretextual arguments.  While the court
acknowledges that some evidence may overlap, it remains that the inquiries related to the causal
connection element of plaintiff's prima facie case and to pretext are different and should be
addressed as such.  *E.g., Trujillo-Cummings v. Pub. Serv. Co. of N.M.*, No. 97-2337, 1999 WL
169336, at *3 (10th Cir. Mar. 29, 1999) ("The fact that temporal proximity may support an inference
of causation sufficient to establish a plaintiff's prima facie case does not automatically demonstrate
that a defendant's proffered justifications are pretextual.").

Defendant cites plaintiff's repeated sleeping at work as the reason for her being disciplined and terminated. Plaintiff does not provide any response to this issue for her FMLA retaliation claim. Defendant has met its burden to establish a legitimate nondiscriminatory reason.

The burden returns to plaintiff to show that this reason is pretextual. Plaintiff lumped the pretext portions of her arguments related to her retaliation claims together. Although plaintiff attempts to exhaust the issue by providing seven pages of legal standards for pretext analysis, plaintiff ultimately provides four arguments for why defendant's explanation is pretextual. First, plaintiff argues that because defendant did not reinstate her to her former position after the investigation found she did not violate the alcohol and drug policy and instead "stuck to its story that it had 'lost confidence' in Plaintiff," a jury could "reject this as an illegitimate, after-the-fact reason for Defendant's actions." Second, plaintiff argues that because Greg Johnson kept a log on plaintiff's activities, a jury could "infer from these facts that there was an agenda to get rid of [plaintiff] *as early as September of 2004*." Third, plaintiff argues that because Dan Smith sent a memorandum accusing plaintiff of "manipulation" and defendant's managers attended a seminar entitled "FMLA Abuse: Fight Back and Win," a jury could "connect these dots." Fourth, plaintiff argues that because there was a close temporal proximity between plaintiff's FMLA protected activity and her termination, a jury could infer there was a connection.

Regarding the first argument, the court has already rejected this position in relation to plaintiff's ADEA claim. It is unfathomable how defendant's loss of confidence in plaintiff in one position two years prior could be evidence that defendant did not terminate plaintiff's employment for sleeping at work or show that defendant was actually motivated by a retaliatory motive related to plaintiff's FMLA rights. Regarding the second argument, plaintiff does not elaborate on how keeping a log indicates that defendant did not discipline and terminate plaintiff for sleeping on the

job.  Plaintiff does not explain any retaliatory motive relating keeping a log and plaintiff's FMLA

rights, or how keeping a log related to the termination of plaintiff's employment.  *See Mondaine v.*

*Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1198 (D. Kan. 2006) (analyzing evidence of pretext on

retaliation claims by noting "none of plaintiff's claimed incidents of pretext tend to show that

[defendant's] stated reason is false or that a retaliatory reason more likely motivated it.").

Regarding the third argument, the court again notes that these facts do not challenge the

legitimacy of defendant's proffered explanation.  Plaintiff only argues that the temporal proximity of

the memorandum connects with the seminar and plaintiff's first warning.  Plaintiff makes no

argument related to the content of the seminar.  Plaintiff makes no argument connecting the seminar

to defendant's actions.  Instead, plaintiff asks, "Would a jury be entitled to infer from these facts [the

memorandum and the seminar being close in time] that Holmes and Arner were acting upon Smith's

suggestion?" and "Could a reasonable jury connect these dots [between the seminar and plaintiff's

first warning]?"  Pl.'s Br. Summ. J. (Doc. 69) 75.

Although plaintiff provides the answers to these rhetorical questions as "absolutely," the

court disagrees.  First, the court notes that temporal proximity standing alone may be insufficient to

carry plaintiff's burden for showing that defendant's reason is pretextual.  This also dispenses with

plaintiff's fourth argument.  *Trujillo-Cummings*, 1999 WL 169336, at *3.  Moreover, the temporal

proximity in plaintiff's third argument is not between any protected activity and adverse action; it

involves events surrounding a seminar with a questionable title.  For this title, "FMLA Abuse: Fight

Back and Win," to be fully relevant also suggests that plaintiff engaged in FMLA abuse.  Simply

put, a seminar title alone cannot meet plaintiff's burden to show pretext.  Plaintiff has made no effort

to show that this seminar title is evidence of pretext as it relates to FMLA retaliation—plaintiff also

considers it to be evidence of ADA and ADEA retaliation.  Plaintiff makes no explanation or

-18-

argument for how the title of the seminar implies that defendant's proffered explanation is unworthy of credence. Plaintiff makes no explanation or argument for how the title of the seminar, by itself, shows that a discriminatory reason more likely motivated the employer. Without any evidence of, or argument supporting, a connection between the seminar and defendant's actions or the content of the seminar, this is insufficient for a rational trier of fact to find for plaintiff. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). In short, plaintiff makes no explanation or argument specific to defendant's explanation being pretextual for her FMLA retaliation claim. The court will not create plaintiff's arguments for her. *See Moore v. Bd. of County Comm'rs of County of Leavenworth*, 470 F. Supp. 2d 1237, 1250 (D. Kan. 2007) ("[T]he Court will not construct plaintiffs' arguments or theories absent coherent discussion of the issues.").

Even when considered together, all of these arguments related to pretext fail to meet plaintiff's burden. Plaintiff has not met her burden to set forth specific facts that there is a genuine issue for trial. Defendant's motion for summary judgment is granted on this claim.

## E.      ADEA and ADA Retaliation Claims

Plaintiff claims that by terminating her employment, defendant retaliated against her for filing claims of age and disability discrimination with the EEOC. The *McDonnell Douglas* framework covers both of these claims. *Webb v. Level 3 Commc'ns, LLC*, 167 F. App'x 725, 733 (10th Cir. 2006) ("ADEA retaliation claims are analyzed under the analytical framework set forth in *McDonnell Douglas*."); *Burnett v. W. Res., Inc.*, 929 F. Supp. 1349, 1359 (D. Kan. 1996) ("A claim of retaliation under the ADA is properly analyzed under the framework set forth in *McDonnell Douglas Corp. . . .*"). To establish a prima facie case of retaliation under the ADEA, plaintiff must show: (1) that she engaged in activity protected under the ADEA; (2) "was adversely affected by an employment decision; and [(]3) a causal connection between the two actions." *Webb*, 167 F. App'x

-19-

at 734.  Similarly, to establish a prima facie case of retaliation under the ADA, plaintiff must show: (1) that she engaged in a protected activity; (2) that she was subjected to an adverse employment action; and (3) a causal connection exists between these actions.  *Burnett*, 929 F. Supp. at 1359–60.

Here, defendant concedes that plaintiff can establish the first two elements of each claim. Plaintiff identifies her protected activity for both claims as her filing a charge of discrimination with the EEOC on September 23, 2004.  Plaintiff identifies the adverse employment action for both claims as being disciplined on March 7 and March 14, 2006 and her notification on March 17, 2006 of her employment being terminated.  However, defendant argues that plaintiff cannot establish a causal connection for either claim, highlighting the temporal distance between these events.

In her facts section for both claims, plaintiff identifies the evidence of the causal connections as Dan Smith's January 30, 2006 memorandum and the seminars entitled "Terminating Employees Without Getting Sued" and "FMLA Abuse: Fight Back and Win."  For the ADA claim, plaintiff also includes Greg Johnson's keeping of a log.  In her argument section, plaintiff argues that the temporal distance is not fatal to her claim, and may be shortened in light of Greg Johnson's log and Dan Smith's memorandum.

Plaintiff's argument fails.  Over one year elapsed from the time of plaintiff's protected activity and her adverse employment actions.  Because plaintiff has not argued how either relates to her EEOC filing or her discipline and termination, the writings of Greg Johnson and Dan Smith are insufficient to fill that time void.  Plaintiff has no evidence of a causal connection for her ADA retaliation claim or her ADEA retaliation claim.  As a result, plaintiff has failed to establish a prima facie case.

Even if the court were to find that plaintiff had established a prima facie case, defendant has articulated a legitimate, nonretaliatory motive for disciplining and terminating plaintiff's

-20-

employment—her repeated sleeping at work.  The court would then return to its earlier analysis of plaintiff's lump of arguments related to pretext.  The court notes that none of those reasons challenge the legitimacy of defendant's explanation.  The court also notes that none of those reasons show any evidence of a retaliatory motive related to plaintiff's ADEA or ADA activity.

Defendant's motion for summary judgment is granted on plaintiff's ADEA and ADA retaliation claims.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 46) is granted.

Dated this 29th day of April 2008, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**